# EXHIBIT B

Filed: 2/2 2020 1:11 AM
Lynne Finley
District Clerk
Collin County, Texas
By Katrina Shelby Deputy
Envelope ID: 42561342

CAUSE NO. 471-02242-2020

| | | |
|---|---|---|
| **J. C. PENNEY CORPORATION, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **COLLIN COUNTY, TEXAS** |
| | § | |
| **SEPHORA USA, INC.,** | § | |
| | § | |
| **Defendant.** | § | **_____ JUDICIAL DISTRICT** |

---

### PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATIONS FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

---

TO THE HONORABLE COURT:

Plaintiff J. C. Penney Corporation, Inc. ("Plaintiff" or "JCP") files this Verified Original Petition and Applications seeking a Declaratory Judgment, Temporary Restraining Order, and Temporary Injunction against Sephora USA, Inc. ("Sephora") and respectfully shows as follows:

### I.  SUMMARY

1.     JCP and Sephora are Parties to an Amended and Restated Joint Enterprise Operating Agreement effective February 1, 2009 (the "Agreement"), which does not expire for several years.  Seeking to circumvent the carefully-crafted dispute resolution process in the contract, Sephora has threatened to terminate the contract ***tomorrow*** and asserted that its "stores-within-a-store" portion of JCP's operations—JCP's only exclusive beauty offering— will not open when JCP re-opens stores later this week, unless JCP agrees to shorten the contract term.

2.     Sephora has no basis to assert a knife-edge termination or demand a premature end to the Parties' contract.  Terminating a key contract that JCP has depended on for over a

decade, while JCP intends to reopen 9 stores this week, would cause irreparable harm.  Sephora

knows this, and its threats to terminate the Agreement ***immediately*** are transparent efforts to

gain negotiating leverage where Sephora has none.  Thus, JCP seeks a declaration that Sephora

has no right to terminate the contract, and asks the Court for a temporary restraining order

barring Sephora from doing so.

## II.  THE PARTIES

3.      JCP is a Delaware Corporation with its headquarters in Plano, Texas.

4.      Sephora is a Delaware corporation with its primary place of business in San

Francisco, California.  Sephora and JCP are sometimes referred to hereinafter jointly as the

"Parties" or individually as a "Party."

## III.  CLAIM FOR RELIEF & DISCOVERY LEVEL

5.      Pursuant to Texas Rule of Civil Procedure 47, the value of the Agreement at

issue exceeds $1 million and JCP seeks non-monetary injunctive relief.

6.      JCP intends to conduct discovery under Level 3 of the Texas Rules of Civil

Procedure.

## IV.  JURISDICTION & VENUE

7.      This Court has subject-matter jurisdiction to hear and determine JCP's writ of

injunction pursuant to Section 65.021(a) of the Texas Civil Practice and Remedies Code. This

Court also has subject matter-jurisdiction over this action because the amount in controversy

exceeds this Court's minimum jurisdictional requirements.

8.      This Court has personal jurisdiction over Sephora because it has purposefully

availed itself of the privileges and benefits of conducting business in Texas.  Among other

things, JCP's claims relate to and arise from Sephora's forum contacts, specifically the

Agreement, which the Parties negotiated, formed, and performed in Texas, and the Parties' ongoing business relationship involving business in Texas.  Jurisdiction is also proper under the Texas long-arm statute because Sephora is "doing business" in Texas by contracting with a Texas resident and performing that contract in whole or in part in Texas.  Moreover, this Court's exercise of jurisdiction over Sephora will not offend traditional notions of fair place and substantial justice and is consistent with due process.

9.      Venue is proper pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events giving rise to JCP's claims arose in Collin County, Texas.  Venue is also proper pursuant to Section 15.002(a)(4) of the Texas Civil Practice and Remedies Code because JCP's headquarters is located in Collin County.

## V.   RELIEF REQUESTED

10.     JCP requests that the Court enter a temporary restraining order preventing Sephora from attempting to terminate the Parties' Agreement without basis and in violation of the Parties' agreed dispute resolution process.  Sephora has threatened to unilaterally terminate the Parties' Agreement *tomorrow* unless JCP agrees to release Sephora from the terms of that Agreement long before its natural end.  Sephora has no right to demand an early exit from the Parties' contract, and termination by Sephora tomorrow would cause immediate and irreparable harm to JCP—which depends on Sephora as its only beauty partner and could not obtain a new beauty partner without reasonable lead time.  JCP intends to reopen 9 of its stores this week, and Sephora has no legal basis to terminate the contract in the midst of that reopening.

11.     While granting a temporary restraining order will prevent immediate and irreparable harm to JCP, it will not harm Sephora.  All JCP is asking for is for this Court to maintain the contractual status quo in which the Parties' agreed contractual dispute resolution

process will play itself out.  Sephora has not even attempted to follow that process; instead, it is trying to end-run the process by unilaterally ending the Parties' 16-year relationship in the middle of a pandemic.  Allowing Sephora to proceed with this extra-contractual "self-help" would cause JCP immediate and irreparable harm.  By contrast, while JCP intends to reopen the first 9 of its own stores this coming week, Sephora has announced that it does not intend to reopen any of its stand-alone stores until at least May 22.  Accordingly, Sephora will not suffer any harm whatsoever from the relief requested by JCP, which simply requires it to honor its contractual obligations and make no effort to terminate the Agreement for 14 (or 28) days.

## VI.  **FACTUAL BACKGROUND**

### A.  **The Parties' Relationship**

12.    JCP is a well-known department store that has been operating for more than a century and is headquartered in Plano, Texas.  JCP currently operates approximately 850 locations across 49 states, employs nearly 90,000 associates, and administers a massive supply chain network with approximately 2,800 vendors and 11 domestic shipping facilities.

13.    Sephora is a California-based subsidiary of a French beauty company that operates over 2,600 stores worldwide.  Sephora operates its own, stand-alone stores throughout the United States, several of which are in Collin County.  In addition, Sephora has partnered with JCP to create "stores-inside-a-store" where Sephora products are sold inside JCP locations.

14.    Specifically, in approximately 2006, JCP and Sephora began a relationship in which Sephora would place stores "inside" JCP locations, containing an exclusive beauty offering which would benefit both Parties.  A photo of one of these locations, known between the Parties as SiJCP (for "Sephora inside J. C. Penney") is copied below:



15.     Today, there are Sephora locations in over 600 JCP stores across the country,
including numerous across Texas.  These locations use a smaller footprint than stand-alone
Sephora stores and, as shown in the photos above and below, are generally located in prominent
locations in each of JCP's stores, such as the entrance or the center of the store:





16.     In those JCP locations that contain SiJCP, Sephora is (with limited exceptions) the exclusive source of beauty offerings within the JCP store, featuring products from more than 200 beauty brands.  Sephora's own collection of products, tools and accessories are also featured in SiJCP locations, as well as JCP's online e-commerce website.  In addition, SiJCP locations inside JCP stores include "the Beauty Studio," where customers can partake in one-on-one beauty sessions with specialists.

## B.  The Parties' Agreement

17.     JCP and Sephora are Parties to the Agreement, which became effective February 1, 2009.  *See* Ex. A.[1]  The current term of the Agreement lasts several more years.

18.     Under the terms of the Agreement, the Parties have opened a large number of SiJCP locations.  *See id.* § 1.1.  The Parties have established an "Operating Committee,"

---

[1] JCP has attached a copy of the Agreement redacted to remove irrelevant but non-public terms. JCP is happy to provide the Court an unredacted version, should the Court request it.

comprised of personnel from both companies, to "determine overall policies, objectives, procedures, methods and actions" under the Agreement. *Id.* § 2.1. Certain matters are assigned to the Operating Committee, including establishment and oversight of an annual operating plan and budget for the SiJCP business, *id.* § 2.3, "Beauty Installation design, location and environment," *id.* § 2.4(a), promotions and marketing plans, *id.* § 2.4(d) training programs, *id.* § 2.4(j), overhead needs, § 2.4(m), preparing financial and operating reports, § 2.4(o), and negotiating with third party vendors, § 2.4(r). Certain matters are directed to specific Parties, for example, "[e]mployment of Beauty Installation Associates, for which JCP, with limited input and advice from Sephora, shall control employment decisions, including selection, compensation, employment, discipline and termination." *See id.* § 2.4(i). But otherwise, SiJCP is a partnership in which the Parties work together to create and maintain standards for the operation of Sephora stores within JCP locations.

19.     The Agreement contains a comprehensive dispute resolution provision in the event that there are serious disagreements between the Parties. Pursuant to this dispute resolution provision, Operating Committee meetings can be called upon five days' notice (or 48 hours in an emergency). Ex. A, § 2.2(b). If there is a matter upon which the Operating Committee is contractually directed to make a joint decision, and there is sufficient disagreement such that a decision cannot be made, then the Operating Committee can be declared (or deemed) to be in "Deadlock," and "***no action shall be taken as to such matter, and no change in the exercise of rights or in the performance of obligations by any of JCP or Sephora as to such matter shall be made while the decision is subject to the Deadlock.***" *Id.* § 2.2(c) (emphasis added). If a Party believes that the issue in "Deadlock" is material, then that Party may refer the matter to a senior operating committee of the Parties' CEOs (the

"Senior Operating Committee").  *Id.*  Referral of the matter to the Senior Operating Committee has to occur by "written notice from one party to the other."  *Id.*  "If neither JCP or Sephora formally refers the Deadlock to the Senior Operating Committee, the matter shall remain unresolved and ***the status quo will be maintained until such time as the Deadlock is resolved or the parties otherwise agree to abandon the deadlock***."  *Id.* (emphasis added).

20.     The Parties' contractual dispute resolution process does not end with referral to the Senior Operating Committee.  Instead, the Agreement provides that the Senior Operating Committee "shall engage in good faith negotiations in an attempt to resolve any Deadlock." *Id.* § 2.2(d).  If the Committee is unable to reach an agreement after such good faith negotiations are complete, then one Party must give notice to the other that there has been a failure, after which the other Party may elect "to proceed to binding [AAA] arbitration, subject to the termination rights set forth in Section 2.2(e)" of the Agreement.  A Party may obtain the right to terminate based on one of these disputes only by pursing this process to its end and obtaining a decision by an arbitration panel.  *Id.*

21.     In other words, under the terms of the Agreement, ***no matters referred to the Operating Committee or the Senior Operating Committee*** give rise to a right to terminate until and unless (1) the matter has been properly referred to the Senior Operating Committee, (2) there has been a formal impasse declared, (3) a Party dissatisfied with the results of the impasse brings the matter to arbitration, (4) an AAA arbitration occurs, and (5) an arbitration panel actually makes a decision.  *See id.* §§ 2.2(e), 9.1(e).  And if a Party decides to terminate following the decision of the arbitration panel, the Agreement is clear that the terminating Party "shall pay an additional amount to the other party equal to fifty percent (50%) of the terminating party's Operating Profit as reflected on the Profit and Loss Report for the last completed fiscal

year." *Id.* § 2.2(e).

22.     In sum, the Parties' Agreement requires this deliberate process to be followed before either Party can declare a termination based upon operational disputes. This process is intentional and has an obvious rationale. The Parties agreed to a long-term relationship, which originally was 10 years and has been extended by amendment to last even longer. That relationship is significant, as reflected in the fact that more than 600 JCP locations contain SiJCPs, and within those JCP locations, SiJCPs are "the exclusive source of Beauty Offerings within such JCP store" with some limited exceptions specified in the Agreement. *Id.* § 4.2(a)(i). Separating SiJCP from JCP would require time, thought, and deliberation, and the Parties agreed that operational disputes would not create a right to terminate the Agreement until and unless the deliberate process within the Agreement was followed.

23.     Finally—and importantly—the Parties also specifically agreed and acknowledged the right of either to enforce compliance with the terms of the Agreement through interim injunctive relief in court if such "interim relief is necessary to prevent serious and irreparable injury to one of the parties." *Id.* § 2.2(d).

### C.  <u>The Parties' Disagreements</u>

24.     The Parties have had several disagreements of late, but none gives Sephora any right to terminate the Agreement, particularly on a knife-edge basis as Sephora has threatened to do ***tomorrow*** unless JCP agrees to its demand to terminate the Agreement early.

25.     *First*, in March 2020, JCP made the difficult decision to temporarily close its stores to protect the health and safety of its associates (and the public) due to the COVID-19 pandemic. Sephora made the same decision with respect to its stand-alone stores.

26.     Following this decision, the Parties had a disagreement related to JCP's decision

to furlough associates at the closed JCP stores, which included associates working at SiJCP locations.   JCP made this decision so that the associates could apply for and collect unemployment insurance while still staying on JCP's benefit plans and receiving health care coverage subsidized by JCP.  While JCP believed this was the right thing to do for both the company and its associates, Sephora expressed dissatisfaction with the decision, asserting in email correspondence and other documents that "JCP has breached the Agreement" through its decision "to 'furlough' the Beauty Installation employees…." Ex. B; Ex. C.

27.     But Sephora's dissatisfaction is of no moment under the Agreement: JCP has exclusive authority over employment decisions, such as the decision to furlough employees. *See* Ex. A, § 2.4(i) ("Employment of Beauty Installation Associates, for which **JCP**, with limited input and advice from Sephora, ***shall control employment decisions***, including selection, compensation, employment, discipline and termination.") (emphasis added).  While Sephora and JCP (including their CEOs) have discussed this decision, *e.g.*, Exs. B-C, Sephora has not formally declared the matter to be in deadlock, let alone initiated the arbitration process, after which either side would have the ability to terminate the Agreement.

28.     *Second*, last week, starting on Thursday, April 23, 2020, Sephora began demanding that when JCP reopens (likely) 9 stores later this week, JCP is required to use a specific, electrostatic spray for hard surfaces within SiJCP locations that is not part of the "Hygiene Standards" that the Parties had previously agreed upon.

29.     JCP disagrees that such a spray is necessary.  So too does the Centers for Disease Control and Prevention ("CDC").  Sephora's demanded electrostatic spray is not recommended by the CDC; nor is there even reference to it on the coronavirus.gov or cdc.gov websites.  JCP is following CDC guidelines and recommendations and taking the necessary and important

precautions to protect its associates and customers.  And, importantly, in doing so, JCP continues to adhere to the Hygiene Standards that the Parties had agreed upon.  Under Section 7.3 of the Agreement, SiJCP business is to be conducted "in substantial accordance with the standards and practices of Sephora retail stores." JCP is complying with and will continue to comply with this provision.  A single difference in pre-daily opening cleaning procedures would not mean that JCP is operating in a manner outside the "substantial accordance" required by Section 7.3.  Further, as described above, stand-alone Sephora stores are not open at all, and Sephora does not plan to open any stand-alone stores until May 22—meaning that Sephora has not yet implemented this new cleaning policy into any store and cannot seek to impose it upon JCP at this time or use it as a basis for terminating the Agreement.

30.     Regardless, *even if* Sephora had good faith bases to challenge JCP's decision on these issues, neither gives Sephora a right to terminate the Parties' Agreement.  None of these issues could plausibly be deemed breaches of the Agreement, let alone material breaches. Moreover, Sephora has not taken the relevant procedural steps that are predicates to seeking termination.  This includes failing to formally declare a "Deadlock" with respect to any of the issues, invoking the Parties' contractual arbitration clause, and securing an arbitration decision from a properly-appointed AAA panel that would give any Party a right to terminate.

### D.  Sephora's Termination Threats

31.     On April 14, 2020, Sephora suggested that it was interested in negotiating with JCP to end the term of the Agreement prior to its natural termination.  JCP advised Sephora that it was willing to engage in a negotiation to that end, provided that the timing and process for any wind-down made sense for JCP.

32.     Thereafter, on Friday, April 24, 2020, Sephora made an explicit threat:  if JCP

did not agree to shorten the term of the Agreement so that it ended in April 2021, then Sephora would terminate the Agreement on Tuesday, April 28, 2020.  Sephora further threatened that, unless JCP agreed to its demanded terms, then:

- Sephora would not be part of JCP's business when JCP stores re-open later this week;

- None of Sephora's brands would ship product to JCP;

- Sephora would refuse to launch new products at SiJCP locations; and

- Sephora would refuse to launch at SiJCP locations an exclusive brand that the Parties had already agreed would be brought to SiJCP locations this summer.

Sephora advised JCP that, unless JCP succumbed to its threats, the Parties' 16 year relationship would suddenly be terminated on April 28, 2020—*tomorrow*—and that Sephora would not be a part of JCP's reopening later this week.

33.     JCP has no alternative to the 16-year relationship it has built with Sephora and cannot replace Sephora—its sole beauty partner—on a prompt basis if Sephora follows through with its threat to immediately terminate the Parties' relationship and the Agreement tomorrow, April 28, 2020.

## VII.  CONDITIONS PRECEDENT

34.     All conditions precedent to JCP's claims for relief have been performed, have occurred, and/or are excused or waived.

## VIII.  CAUSES OF ACTION

### A. DECLARATORY JUDGMENT

35.     JCP incorporates herein by reference the allegations set forth in the preceding paragraphs.

36.     The Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code

Ann. § 37.004(a) reads in relevant part: "A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a) ("A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed…."). Under this provision**,** "any person interested under a written contract may have determined any question of construction or validity arising under that contract and obtain a declaration of rights, status, or other legal relations thereunder." *Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 228 (Tex. App.—Dallas 2012, no pet.) (quoting Tex. Civ. Prac. & Code Ann. § 37.004(a)); *see also Trinity Universal Ins. Co. v. Sweatt,* 978 S.W.2d 267, 270 (Tex. App.— Fort Worth 1998, no. pet.) ("Construction and validity of contracts are the most obvious and common uses of the declaratory judgment action.").

37.     This Court has the power to declare the rights, status, and legal relations between JCP and Sephora for the purposes of injunctive relief.  JCP has not breached the Agreement at all, let alone "materially" so, and Sephora has not given JCP written notice of breach or an opportunity to cure.  Further, the agreed-to dispute resolution process established under Section 2.2 of the Agreement has not been pursued, let alone reached conclusion, such that termination is possible.  By any measure, Sephora has no right to terminate the contract.

38.     Regarding the furloughing of employees, Section 2.4(i) of the Agreement provides that "**JCP, *with limited input and advice from Sephora*, shall control employment**

**decisions**, including selection, compensation, employment, discipline and termination." Ex. A, § 2.4(i) (emphases added).  Further, Section 12.2 of the Agreement reiterates JCP's control over employees, including "Beauty Installation Associates," providing that "***JCP shall maintain complete control over its employees including Beauty Installation Associates, its agents and its subcontractors with respect to performance of the Operations***."  *Id.* § 12.2. Thus, Sephora has no plausible basis to assert a breach based on JCP's decision to furlough employees.

39.     Regarding JCP's plans to clean its stores upon reopening this week, JCP is certainly in substantial compliance with both the Parties' agreed-upon procedures and those that are used in open Sephora stand-alone stores.  Indeed, JCP plans to follow the agreed-upon procedures that the Parties' Operating Committee has put in place.  While Sephora has claimed that it intends to implement additional procedures when it opens on May 22, 2020, no such procedures are in place today (given that Sephora's stores are not open).

40.     In any event, Sephora has no basis to assert any of this as a basis for termination based on alleged breach of contract on Tuesday, April 28, 2020, because (a) there has been no written notice of material breach; and (b) the 30-day cure period has not been triggered, let alone passed.

41.     Furthermore, the Agreement provides a contractual process for resolving operational-related disputes that could potentially lead to termination at the end of the process. *See* Ex. A, § 2.4(e).  But that process has not even begun, as none of the procedures laid out in Sections 2.2(d) and 2.2(e) have occurred:

- The Operating Committee has not sent formal notice to the Senior Operating Committee of a Deadlock;

- The Senior Operating Committee has not completed good faith negotiations to resolve a Deadlock;

- The Senior Operating Committee has not formally reached a Deadlock;

- No Party has provided formal notice to the other Party that the former wishes to engage in arbitration;

- Arbitration has not occurred; and

- No arbitration decision has been made.

42.      In any event, a genuine case and controversy exists between JCP and Sephora, within the jurisdiction of this Court, and involving rights, status, and other legal relations of the Parties.  *See* Tex. Civ. Prac. & Rem. Code §37.002(b).

43.      Pursuant to the Uniform Declaratory Judgment Act, JCP seeks a declaration from the Court that Sephora has no right to declare a termination of the Agreement.

44.      Further, pursuant to Texas Civil Practice and Remedies Code §37.009, JCP is entitled to recover its reasonable attorneys' fees and costs.  JCP has retained the undersigned attorneys and agreed to pay their reasonable and necessary attorneys' fees.

## IX.  REQUEST FOR TEMPORARY RESTRAINING ORDER

45.      JCP incorporates herein by reference the allegations set forth in the preceding paragraphs.

46.      The allegations set forth in this application for restraining order are supported by the verifications of these allegations by JCP's Executive Vice President and Chief Merchant, Michelle Wlazlo, and the Agreement attached hereto.

47.      Under Texas law, an application for a temporary restraining order must plead "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84

S.W.3d 198, 204 (Tex. 2002). "The applicant is not required to establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits." *Sargeant v. Al Saleh*, 512 S.W.3d 399, 409 (Tex. App.—Corpus Christi 2016, no pet.). And the parties have specifically agreed that interim injunctive relief is available to enforce the terms of the agreement where (as here) such "interim relief is necessary to prevent serious and irreparable injury to one of the parties." Ex. A, § 2.2(d).

48. Termination of the Agreement tomorrow as threatened by Sephora would leave JCP without a stand-alone beauty offering for its customers. JCP would immediately lose the ability to (i) sell customers (with very limited exception) beauty offerings in JCP stores with SiJCP locations; (ii) provide customers one-on-one beauty sessions with specialists; and (iii) market beauty offerings, including exclusive offerings, such as the specific, exclusive brand that the Parties had agreed would be brought to SiJCP, all of which contribute to JCP's ability to attract more customers and further build its brand and reputation for selling highly desired beauty offerings. Indeed, customers across the country who come to JCP, or shop on its website, expecting to purchase Sephora products would be unable to, because Sephora has asserted that (unless JCP accedes to Sephora's demands) it will not be part of JCP's business when JCP stores re-open later this week and will stop shipping Sephora products to JCP stores. JCP cannot quantify the number of actual and potential customers that it would lose as a result of Sephora's conduct.

49. JCP has no other beauty partner to fill the void that would be caused by Sephora's tactics. And to make matters worse, JCP is currently not permitted to engage with other potential partners who might be long-term replacements for Sephora because of the terms of the Agreement, and it would take some time to replace Sephora even if JCP was permitted

to do so.

50.     Accordingly, in the interim, and beginning immediately, if Sephora terminated the Agreement, JCP would suffer irreparable harm, including the disruption of its business, the loss of clientele, and the loss of goodwill.  It would be difficult if not impossible to calculate the damages of a knife-edge termination of the Agreement, and the damage done would not be sufficiently captured by monetary damages awarded against Sephora after-the-fact.

51.     JCP is thus entitled to a temporary restraining order and other equitable relief pursuant to Texas law, including without limitation under subsections (1), (2), and (3) of section 65.011 of the Texas Civil Practice and Remedies Code.

52.     As set forth in detail above and below, JCP has established by this verified petition: (1) a cause of action against Sephora; (2) probable right to relief, and (3) a probable, imminent, and irreparable injury in the interim.  Furthermore, a temporary restraining order should be granted pursuant to Texas Rule of Civil Procedure 680 because this verified petition shows by specific facts that immediate and irreparable injury, loss, or damage will result to JCP before notice can be served and a hearing had hereon.

53.     As detailed above, there is no question that Sephora imminently intends to breach its Agreement with JCP by declaring a termination without basis and without pursuing the dispute resolution that is explicitly called for by the Agreement.   JCP has therefore established, at the very least, a cause of action against Sephora and probable right to the relief.

54.     Without the Court's intervention, JCP will suffer imminent, irreparable harm for which there is no adequate remedy at law. This includes: (i) disruption of JCP's business operations, and (ii) loss of goodwill, clientele, marketing techniques, office stability and the like. The full extent of these harms is difficult—if not impossible—to fully assess.  *E.g.*,

*Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Threatened injury to a business's reputation and good will with customers is frequently the basis for temporary injunctive relief.") (collecting cases); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.,* 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009) ("Disruption to a business can be irreparable harm. Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy."); *Tex. Dep't of State Health Services v. Holmes*, 294 S.W.3d 328, 334 (Tex. App.—Austin 2009, pet. denied) ("Irreparable harm for purposes of a temporary injunction may include noncompensable injuries such as a company's loss of goodwill, clientele, marketing techniques, office stability and the like.").

55.    It is thus settled law in Texas that these sorts of injuries are the "very type of harm for which a temporary injunction can issue." *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ); *see also Intercontinental Terminals Co.*, 354 S.W.3d at 893–96 (affirming trial court's conclusion that company's restriction on railway track would cause customer uncertainty, delay in servicing customers, backlog costs, and demurrage fees that would be very difficult to calculate).  That is because "the irreparable injury requirement is satisfied when injuries of this nature are difficult to calculate or monetize." *Id.* (collecting cases); *see also Regal Entm't Grp. v. iPic-Gold Class Entm't, LLC*, 507 S.W.3d 337, 356 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (affirming TRO because trial court "could have concluded that at least some of the harm that iPic would suffer was reputational—an injury to its goodwill—and irreparable"); *Frequent Flyer Depot*, 281 S.W.3d at 228 (affirming TRO prohibiting sale of airline rewards points pending trial on contract claims based on irreparable harm finding that sale of airline points

"affects the reputation and loyalty" of airline's customers); *Townson v. Liming*, No. 06–10–00027–CV, 2010 WL 2767984, at *3 (Tex.App.—Texarkana July 14, 2010, no pet.) ("The value of lost patients, lost business contacts and collaborations, and lost hospital privileges are anything but fixed, settled, and indisputable. Rather, by their very nature, it is likely that [plaintiff] might never even be aware of specific patients and business contacts lost.").

56.     Maintaining the contractual status quo will prevent this irreparable harm. Here, the last peaceable, non-contested status between the parties is their ordinary operation under the Agreement. *Universal Health Services, Inc. v. Thompson* is illustrative. 24 S.W.3d 570 (Tex. App.—Austin 2000, no pet.). There, the court's injunction prohibited a hospital from closing—thus maintaining the status quo—"by ordering that operations continue as they existed *prior* to the Investors' attempt to close the hospital." *Thompson*, 24 S.W.3d at 577; *see also Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 767 (Tex. App.—Texarkana 2017, pet. dism'd) (maintaining status quo by preserving rights under agreement). So too here. Injunctive relief is necessary to preserve the parties' contractual status quo and prevent Sephora from terminating the contract outside of the parties' agreed dispute resolution process.

57.     JCP is willing to post a bond if the Court deems it necessary and appropriate.

58.     For all these reasons, pursuant to Texas Rule of Civil Procedure 680 *et seq.* and Texas Civil Practice and Remedies Code § 65.001 *et seq.*, and to preserve the status quo during the pendency of this action, JCP respectfully requests a temporary restraining order immediately restraining Sephora, including its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise (collectively, the "Restrained Parties") from threatening to, attempting to, or purporting to, terminate the Agreement.

59.     Further, in light of the on-going State of Disaster and existing shelter-in-place and similar orders extending through approximately mid-May 2020, JCP respectfully requests that the Court extend the temporary restraining order to May 25, 2020. The Court unquestionably has the authority to do so pursuant to the Texas Supreme Court's *First Emergency Order Regarding the COVID-19 State of Disaster*, which provides that this Court may "[m]odify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted."  Even absent this authority, the Court may extend the temporary restraining order for up to an additional fourteen days under Rule 680 of the Texas Rules of Civil Procedure for good cause. Good cause undoubtedly exists here in light of the serious health risks caused by COVID-19, the declared State of Disaster, and shelter-in-place orders, all of which will impact and limit the Parties' abilities to gather witnesses and evidence for the temporary injunction hearing.

60.     Finally, compliance with Local Rule 2.4(a) is not required because Local Rule 2.4(b)(2) applies.  As described above, the temporary restraining order JCP seeks is to prevent Sephora from threatening to, attempting to, or purporting to, terminate the Agreement. Providing Sephora two hours' notice of this application would provide it the ability to do precisely that.  As such, any such notice "would impair or annul the Court's power to grant relief because the subject matter of the application could be compromised…if notice were given." L.R. 2.4(b)(2).

## X. <u>REQUEST FOR TEMPORARY INJUNCTION</u>

61.     JCP incorporates herein by reference the allegations in the preceding paragraphs. JCP respectfully asks the Court to set its application for temporary injunction for a

hearing and, after the hearing, issue a temporary injunction against Sephora. JCP has joined all indispensable parties under the Texas Rules of Civil Procedure.

## XI.  ATTORNEYS' FEES

62.     JCP incorporates herein by reference the allegations set forth in the preceding paragraphs. Pursuant to Texas Civil Practice and Remedies Code § 38.001 and the Uniform Declaratory Judgment Act, JCP is entitled to and hereby requests its attorneys' fees.

## XII.  CONCLUSION & PRAYER

For these reasons, Plaintiff J. C. Penney Corporation, Inc. respectfully requests that Defendant Sephora USA, Inc. be cited to appear and answer herein, and that: (i) JCP be awarded temporary injunctive relief to prevent irreparable injury; (ii) JCP be awarded declaratory relief; (iii) JCP be awarded its attorneys' fees; and (iv) for other relief to which JCP is entitled.

Dated: April 27, 2020.                                 Respectfully submitted,

*/s/  Jeremy A. Fielding*
Jeremy A. Fielding
Texas Bar No. 24040895
jeremy.fielding@kirkland.com
Michael Kalis
Texas Bar No. 24092606
michael.kalis@kirkland.com
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, Texas 75201
(214) 972-1770
**ATTORNEYS FOR PLAINTIFF J. C. PENNEY CORPORATION, INC.**

## CERTIFICATE PURSUANT TO L.R. 2.4

Pursuant to L.R. 2.4(b)(2), the undersigned counsel hereby certifies that notice to the opposing party or counsel would impair or annul the Court's power to grant relief because the subject matter of the application could be compromised, if notice were given.

*/s/ Jeremy A. Fielding*
Jeremy A. Fielding

**Plaintiff's Verified Original Petition and Applications for Declaratory Judgment,    Page 21 Temporary Restraining Order and Temporary Injunction**

CAUSE NO. _____

| | | |
|---|---|---|
| J. C. PENNEY CORPORATION, INC., | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| SEPHORA USA, INC., | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

### VERIFICATION/DECLARATION OF MICHELLE WLAZLO

I, Michelle Wlazlo, hereby declare:

1.      I am the Executive Vice President and Chief Merchant of J. C. Penney Corporation, Inc. ("JCP") and have held that position since March 1, 2019. I am over twenty-one years of age and of sound mind. I have never been convicted of a crime. I am competent to testify and have personal knowledge of the facts stated in JCP's Verified Original Petition, Application for Declaratory Judgment, Temporary Restraining Order, and Temporary Injunction (the "Petition").

2.      I have read the Petition. The facts stated in paragraphs 1-4, 8, 12-17, 24-33, 41, and 48-50 are true and correct.

3.      Attached as Exhibit A to the Petition is a true and correct copy of the Amended and Restated Joint Enterprise Operating Agreement, as amended, between JCP and Sephora USA, Inc.

My name is Michelle Wlazlo, my date of birth is July 20, 1967, and my business address is 6501 Legacy Drive, Plano, TX  75024. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Collin County, TX, on the 27th of April, 2020.

_Michelle Wlazlo_
Michelle Wlazlo

# EXHIBIT A

**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 23**

Exhibit A - Page 1 of 112

EXECUTION VERSION

## AMENDED AND RESTATED
## JOINT ENTERPRISE OPERATING AGREEMENT

**THIS AMENDED AND RESTATED JOINT ENTERPRISE OPERATING AGREEMENT** (this "Agreement") is made this 30th day of March, 2009, but effective as of February 1, 2009 (the "Effective Date"), by and between J. C. Penney Corporation, Inc., a Delaware corporation ("JCP"), and Sephora USA, Inc., a Delaware corporation ("Sephora").

**Recitals**



EXECUTION VERSION



      1.1    <u>General</u>.  JCP and Sephora hereby agree that the Parties shall open and operate Beauty Installations, that Sephora shall fulfill all Beauty Offering orders from JCP Websites and JCP Catalogs and that all of the rights and obligations relating to the Operations shall be subject to and governed by this Agreement.  Unless the parties otherwise agree in writing, the Operations shall be limited to the purpose of opening and operating the Beauty Installations and fulfilling Beauty Offering orders from JCP Websites and through JCP Catalogs and nothing in the Agreement shall be construed to enlarge such purposes.



EXECUTION VERSION

2.1     Organization and Composition.  JCP and Sephora have established an operating committee (the "Operating Committee") to determine overall policies, objectives, procedures, methods and actions under this Agreement.  The Operating Committee consists of two members appointed by each of JCP and Sephora.  The initial representatives for Sephora are its General Manager and its Divisional Merchandise Manager.  The initial representatives for JCP are its Divisional Vice President and its President.  The Operating Committee may change the number of members in the Operating Committee, provided that such committee shall consist of an equal number of members of each of JCP and Sephora.  Each of JCP and Sephora may remove one or more of its appointed members of the Operating Committee and appoint substitutes at any time upon written notice to the other party.  Any substitute so acting shall be deemed a member of the Operating Committee.



(b)     Meetings.  The Operating Committee shall hold regular meetings at least once per JCP Fiscal calendar quarter at a mutually agreed place.  The parties shall rotate among themselves the notice obligation for all regular meeting and such notices shall require thirty (30) days' notice to the other party of such regular meetings.  Sephora hereby agrees to be the first party to give notice of the first regular meeting after the Effective Date of this Agreement.  Additionally, a party may call a special meeting upon five days' notice to the other party, provided that in the case of an emergency, a party may call a special meeting upon forty-eight (48) hours notice to the other party.  Each notice of a meeting shall include an itemized agenda prepared by the party giving notice, but any matters may be considered with the consent of the parties.  Members of the Operating Committee may participate in a meeting of the Operating Committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting will constitute presence at the meeting.  The parties shall rotate responsibility for the preparation of minutes for all meetings and shall distribute copies of such minutes to the parties within ten business days after the meeting.  Each party shall pay its costs and expenses of having its personnel attend an Operating Committee meeting.

(c)     Deadlock.  If the Operating Committee is unable to reach a decision on any matter requiring such decision and the right to make such decision is not given to any one or more members or any operating subcommittee created by the Operating Committee (a "Deadlock"), no action shall be taken as to such matter, and no change in the exercise of rights or in the performance of obligations by any of JCP or Sephora as to such matter shall be made while the decision is subject to the Deadlock.  Either JCP or Sephora may deem that a Deadlock exists by providing notice of the Deadlock to the other party.  If neither party declares a matter to be a Deadlock within thirty (30) calendar days after the failure of the Operating Committee to reach a decision, the matter shall automatically be deemed to be a Deadlock.  If either party believes in good faith that any Deadlock is material (whether quantifiable or not), then that party may refer the matter to a senior operating committee, which shall consist of the CEO of Sephora and the CEO of JCP, or such other person as either party may designate as its senior operating

representative (the "Senior Operating Committee").  A referral to the Senior Operating Committee must be made by written notice by one party to the other.  If neither JCP or Sephora formally refers the Deadlock to the Senior Operating Committee, the matter shall remain unresolved and the *status quo* will be maintained until such time as the Deadlock is resolved or the parties otherwise agree to abandon the Deadlock.

(d)     Arbitration.  For any matters referred to the Senior Operating Committee, the members of the Senior Operating Committee shall engage in good faith negotiations in an attempt to resolve any Deadlock.  In the event that the Senior Operating Committee is unable to reach an agreement relating to the Deadlock after such good faith negotiations, then within twenty (20) days of receipt of notice of the failure of the Senior Operating Committee to reach a satisfactory resolution of such Deadlock, a party may give the other party notice as to whether such party elects to proceed to binding arbitration, subject to the termination rights set forth below in Section 2.2 (e).  In such case, the matter shall then be referred to binding arbitration to be conducted under the auspices of the American Arbitration Association ("AAA").  Any arbitration pursuant to this Agreement shall be conducted before a panel consisting of three (3) arbitrators.  Each party shall appoint one arbitrator to the panel and the two selected arbitrators shall then appoint the third arbitrator, all in accordance with the Commercial Arbitration Rules of the AAA or as such rules are modified by the agreement of the parties.  All members of the arbitration panel, including the member selected by the other two members, shall be experienced in United States retailing business.  If a party fails to name its arbitrator within ten (10) days after the date a demand to arbitrate is made by a party, the AAA shall make the appointment of the arbitrator, using the same qualification standards.  Should any of the arbitrators appointed become unable to act before a decision is given, the vacancy shall be filled by the method set forth for the original appointment.  The arbitration shall be held in the State of New York, applying the substantive law applicable to this Agreement, except that the arbitrator shall not be empowered to award damages in excess of actual damages.  The use of any alternative dispute resolution procedure will not be construed, under the doctrine of laches, waiver or estoppel, to adversely affect the rights of either party.  Nothing in this Section 2.2(d) shall prevent either party from resorting to a judicial proceeding before the courts to which the parties have submitted exclusive jurisdiction and venue if interim relief is necessary to prevent serious and irreparable injury to one of the parties.  Further, judgment on the arbitration award may be entered in such courts.  For the avoidance of doubt, the parties acknowledge and agree that during the pendency of any Deadlock during the arbitration procedures, the *status quo* regarding the subject matter of the issue will remain unaffected.

(e)     Termination After Arbitration.  Upon receipt of an arbitration decision pursuant to Section 2.2 (d) above, a party may elect to terminate this Agreement by giving notice to the other party within thirty (30) calendar days of receipt of the arbitrator's final written decision.

(i)     A party electing to terminate this Agreement pursuant to this provision shall pay an additional amount to the other party equal to fifty percent (50%) of the terminating party's Operating Profit as reflected on the Profit and Loss Report for the last completed fiscal year.

(ii)     The arbitration panel shall also designate in its decision either:

(A)     that because the party calling for the arbitration did not prevail on the majority of issues submitted to arbitration, that party will bear, outside of the Profit and Loss Report, the full cost of the arbitration proceeding , or

(B)     that because the party calling for the arbitration proceeding prevailed on the majority of issues, the cost of the arbitration proceeding shall be charged to the Profit and Loss Report.

(C)     For purposes of the foregoing, "the cost of the arbitration proceeding" shall mean fees and costs directly relating to the arbitration panel. Each party shall bear any fees and costs of its own legal counsel (as well as any experts hired on its behalf),

2.3     <u>Operating Plan</u>.  For each JCP Fiscal Year, the Operating Committee shall establish and oversee an annual operating budget and  plan for the SiJCP Beauty Business, which duties shall include without limitation establishing financial and operating goals and performance and expansion plans, monitoring actual results against such budget and plans on a monthly basis, reviewing major changes, monitoring and responding to competitive activities, identifying the implications of market trends, sponsoring improvement opportunities, identifying potential SiJCP locations to ensure optimal market coverage in order to optimize SiJCP's profitability and resolving any disputed issues between JCP and Sephora with respect to such budget and plans.  Such budget and operating plan for the JCP Fiscal Year shall be presented to the Operating Committee in a preliminary form by September 30th of the preceding year and it shall be finalized by the Operating Committee no later than the first day of the next JCP Fiscal Year.

2.4     <u>Other Duties</u>.  The Operating Committee shall establish, direct and oversee the following:

(a)     Beauty Installation design, location and environment, which Beauty Installation shall include Sephora's signature trade dress and the necessary animations, merchandise updates, retrofits and fixtures necessary for promoting the SiJCP Beauty Business and to the extent possible, maintain the experience of Sephora retail stores, subject to the provisions of Section 2.4(c). Beauty Installation costs will be reviewed and approved annually by the Operating Committee and will be consistent with the approved budget.  The parties anticipate that Beauty Installations will be 1500-2000 square feet in size, and will be located in a prominent location in order to benefit from the highest possible foot traffic.  The Operating Committee shall develop a process of selecting locations for Beauty Installations in a manner that will optimize market share while minimizing the impact on any overlapping Beauty Installations or Sephora retail stores; provided, however, that the location of any Beauty Installation must be approved by both JCP and Sephora, which approval may be granted or withheld in either party's sole discretion.  The Operating Committee shall oversee the development of a small market strategy

Plaintiff's Verified Original Petition and Applications for          Page 5 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 28

Exhibit A - Page 6 of 112

to determine over time if certain small markets can sustain both a small box format Sephora store (which JCP understands Sephora is developing) and a Beauty Installation within the same mall or trade area.  The parties agree that new Beauty Installations should be opened at a rate consistent with Schedule 8 or such other growth as determined appropriate by the Operating Committee;



      (d)     Subject to Section 7.10, promotion and marketing plans; provided, however, that the Beauty Installation will be excluded from JCP's store-wide promotions;

      (e)     Brand selection and assortment, for which Sephora shall be responsible for the selection of the third-party vendors that shall supply Beauty Offerings of the Beauty Installation, the brand relationships with such vendors, margin negotiations with such vendors, and the coordination of assortment of such Beauty Offerings. Sephora shall consult with JCP on JCP's forecast and buying plans to ensure each Beauty Installation shall have sufficient supply to satisfy budget and operating plans ;



      (i)     Employment of Beauty Installation Associates, for which JCP, with limited input and advice from Sephora, shall control employment decisions, including selection, compensation, employment, discipline and termination;

      (j)     Training programs tailored specifically for Beauty Installation Associates developed jointly by the parties, which programs shall be instructed by employees or agents of Sephora with oversight by JCP; provided, however, that Sephora will be responsible for determining and conducting all brand, product and selling skills trainings, and JCP will be responsible for determining and conducting all leadership and developmental training;



(m)   Overhead needs for the SiJCP Beauty Business including, but not limited to, leadership, support and staffing dedicated to the SiJCP Beauty Business;



(o)   Financial and operating reports within ten (10) business days from JCP's month-end close, consisting of a P&L in the form attached as Exhibit A (or as otherwise determined by the Operating Committee) (the "Profit and Loss Report"), and a settlement statement and such other *ad hoc* statements as the parties shall mutually agree upon;



(r)   Collective negotiation and bargaining with third party vendors in order to obtain advantageous pricing, including all allowances, for materials and services to be generated on behalf of or utilized by the SiJCP Beauty Business;



Plaintiff's Verified Original Petition and Applications for   Page 7 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 30

Exhibit A - Page 8 of 112





### 4.2   Limited Exclusivity

(a)   <u>JCP Agreements</u>.

(i)   During the Term, from the time a Beauty Installation opens for business in any JCP store, the Beauty Installation will be the exclusive source of Beauty Offerings within such JCP store with the exception of the "Excluded Beauty Offerings" as set forth in <u>Schedule 2.</u> The parties acknowledge and agree that nothing contained in this Agreement shall be interpreted or construed to require JCP to open a Beauty Installation inside a particular JCP store.







Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 34

Exhibit A - Page 12 of 112

EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 12 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 35

Exhibit A - Page 13 of 112



EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for    Page 14 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 37

Exhibit A - Page 15 of 112

EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 15 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 38

Exhibit A - Page 16 of 112



EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 17 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 40

Exhibit A - Page 18 of 112

EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 18 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 41

Exhibit A - Page 19 of 112

EXECUTION VERSION



      7.3    <u>Standard of Care</u>.  Both parties shall conduct the SiJCP Beauty Business in a good, workmanlike and efficient manner, in substantial accordance with the standards and practices of Sephora retail stores, and in substantial accordance with the terms and provisions of

Plaintiff's Verified Original Petition and Applications for    Page 19 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 42

Exhibit A - Page 20 of 112

leases, licenses, permits, contracts and other agreements pertaining to the SiJCP Beauty Business.



EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 21 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 44

Exhibit A - Page 22 of 112

EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 22 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 45

Exhibit A - Page 23 of 112



9.1    Termination Events.  This Agreement shall terminate upon occurrence of any the following:

(e)    a termination in accordance with the provisions of Section 2.2 (e).

Any termination under this Section 9.1 shall be referred to as a "Termination."

Plaintiff's Verified Original Petition and Applications for    Page 23 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 46

Exhibit A - Page 24 of 112

EXECUTION VERSION



EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 25 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 48

Exhibit A - Page 26 of 112

EXECUTION VERSION



EXECUTION VERSION



Plaintiff's Verified Original Petition and Applications for   Page 27 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 50

Exhibit A - Page 28 of 112

defending a Third Party Claim shall timely provide to the other party all such information



**12.2    Employees; Agents; Subcontractors**.  JCP shall maintain complete control over its employees including Beauty Installation Associates, its agents and its subcontractors with respect to performance of the Operations.  Nothing contained in this Agreement, any of the Initial Agreements or any other agreement (including any subcontract awarded by JCP) shall create any contractual relationship between any JCP employee including any Beauty Installation Associate, any agent or any subcontractor, on the one hand, and Sephora, on the other hand.





Plaintiff's Verified Original Petition and Applications for     Page 29 of 33
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 52

Exhibit A - Page 30 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 53



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 54

Exhibit A - Page 32 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 55

Exhibit A - Page 33 of 112

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives effective as of the date first written above.

JCP:                                          **J. C. PENNEY CORPORATION, INC.**

By: _____

Ken C. Hicks
President and Chief Merchandising
Officer

Sephora:                                      **SEPHORA USA, INC.**

By: _____

Satish Malhotra
Senior Vice-President and General Manager, SiJCP

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 57

Exhibit A - Page 35 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 58

Exhibit A - Page 36 of 112

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 59

Exhibit A - Page 37 of 112

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 60

Exhibit A - Page 38 of 112





Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 64

Page 4 of 7

Exhibit A - Page 42 of 112

Plaintiff's Verified Original Petition and Applications for          Page 6 of 7
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 66

Exhibit A - Page 44 of 112

EXECUTION VERSION

Plaintiff's Verified Original Petition and Applications for        Page 7 of 7
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 67

Exhibit A - Page 45 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 68

Exhibit A - Page 46 of 112





Plaintiffs' Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 70

Exhibit A - Page 48 of 112

Plaintiffs' Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 71

Exhibit A - Page 49 of 112



Plaintiffs' Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 72

Exhibit A - Page 50 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 73

Exhibit A - Page 51 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 74

Exhibit A - Page 52 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 75

Exhibit A - Page 53 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 76

Exhibit A - Page 54 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 77

Exhibit A - Page 55 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 78

Exhibit A - Page 56 of 112



**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 79**

Exhibit A - Page 57 of 112











Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 85

Exhibit A - Page 63 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 86

Exhibit A - Page 64 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 87

Exhibit A - Page 65 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 88

Exhibit A - Page 66 of 112











Plaintiff's Verified Original Petition and Applications for   Page 6 of 13
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 94

Exhibit A - Page 72 of 112





Plaintiff's Verified Original Petition and Applications for     Page 8 of 13
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 96

Exhibit A - Page 74 of 112



Page 10 of 13

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 98

Exhibit A - Page 76 of 112





Page 12 of 13

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 100

Exhibit A - Page 78 of 112



Page 13 of 13

**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 101**

Exhibit A - Page 79 of 112



162795-5                              Page 1 of 4



162795-5                                        Page 2 of 4



162795-5                    Page 3 of 4



162795-5                      Page 4 of 4

**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 105**

Exhibit A - Page 83 of 112



Page 1 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 107

Exhibit A - Page 85 of 112

EXECUTION VERSION



Page 2 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 108

Exhibit A - Page 86 of 112

EXECUTION VERSION



Page 3 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 109

Exhibit A - Page 87 of 112



**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 110**

Exhibit A - Page 88 of 112

EXECUTION VERSION



Page 5 of 14

**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 111**

Exhibit A - Page 89 of 112



Page 6 of 14



Page 7 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 113

Exhibit A - Page 91 of 112

EXECUTION VERSION



Page 8 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 114

Exhibit A - Page 92 of 112



Page 9 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 115

Exhibit A - Page 93 of 112

EXECUTION VERSION



Page 10 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 116

Exhibit A - Page 94 of 112



Page 11 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 117

Exhibit A - Page 95 of 112

EXECUTION VERSION



Page 12 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 118

Exhibit A - Page 96 of 112

EXECUTION VERSION



Page 13 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 119

Exhibit A - Page 97 of 112

EXECUTION VERSION



Page 14 of 14

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 120

Exhibit A - Page 98 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 121

Exhibit A - Page 99 of 112

August 1, 2014
Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 122

Exhibit A - Page 100 of 112

1









**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 127**

Exhibit A - Page 105 of 112

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 128

Exhibit A - Page 106 of 112





Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 130

Exhibit A - Page 108 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 131

Exhibit A - Page 109 of 112



Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 132

Exhibit A - Page 110 of 112



7

323084.1



8

323084.1

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 134

Exhibit A - Page 112 of 112

# EXHIBIT B

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 135

Exhibit B - Page 1 of 4

**Attachments:**　　　　　　　　SiJCP Amendment No. 5 (4.24).docx

_____

From: Malhotra, Satish <Satish.Malhotra@sephora.com>
Sent: Sunday, April 26, 2020 4:19 PM
To: Rougeot, Jean-André; Soltau, Jill A
Cc: Wlazlo, Michelle
Subject: Re: Amendment to contract to reflect wind down draft

WARNING :This email originated outside of JCPenney.
DO NOT CLICK links or open attachments unless the actual email address, not just the display name, is the actual email address that you expect to see. Report any suspicious emails immediately via the Report Phishing button in Outlook, or forwarding to phishing@jcp.com<mailto:phishing@jcp.com>.


Please find attached the simple amendment that Jean Andre was referring to.


On 4/26/20, 1:12 PM, "Rougeot, Jean-André" <jeanandrer@sephora.com> wrote:


   As a follow up to my email, I asked our lawyers to draft a SIMPLE  amendment to our current contract reflecting the key principles of our Wind Down agreement .
   This just gives you a sense of what the legal version of blue print of my email looks like .
   Key on Tuesday is to agree on the 4 basic principles and then the lawyers can finalize the amendment

   Best

   Jean andre



_____
Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged information and may not be disclosed, copied or distributed to anyone without authorization from the email's originator. It is strictly prohibited for unaddressed individuals or entities to take any action based on upon information contained in this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.
_____

AMENDMENT NO. 5
TO
AMENDED AND RESTATED JOINT ENTERPRISE OPERATING AGREEMENT
BY AND BETWEEN
SEPHORA USA, INC.
AND
J.C. PENNEY CORPORATION, INC.

This Amendment No. 5 ("Amendment 5") is made and effective as of this 29th day of April, 2020 (the "Amendment Effective Date") in order to modify certain of the terms of the Amended and Restated Joint Enterprise Operating Agreement dated March 30, 2009, as previously amended by Amendment No. 1 dated January 28, 2011, Amendment No. 2 dated April 29, 2015, Amendment No 3 dated October 13, 2015, and Amendment No. 4 dated September 13, 2016 (as amended, the "Agreement") governing the terms and conditions of operating the SiJCP Beauty Business by and between by and between SEPHORA USA, INC. ("Sephora") and J.C. PENNEY CORPORATION, INC. ("JCP" and JCP and Sephora together may be referred to as the "Parties").  Capitalized terms not otherwise defined herein shall have the meaning given such terms in the Agreement.

WHEREAS, in response to the coronavirus crisis and applicable federal, state and local social distancing guidelines and stay-at-home orders, both Parties have temporarily closed their respective retail stores, including, with respect to JCP, the Beauty Installations; and

WHEREAS, Sephora believes, and JCP disputes, that JCP has breached the Agreement in a number of ways, including (without limitation) the decision by JCP to "furlough" the Beauty Installation employees without pay commencing on March 31, 2020, which is inconsistent with the standards and practices of Sephora in responding to such crisis, and Sephora further believes that such "furlough" decision could substantially impair Sephora's reputation and imperil the ability of SiJCP to recommence its business after the end of the crisis; and

WHEREAS, the Parties have met numerous times in connection with a variety of material matters relating to the operation of the SiJCP Beauty Business and the aforementioned disputes and now desire to so resolve their disagreements and modify the terms of the Agreement in order to, among other things, release each other from all exclusivity restrictions set forth in the Agreement and shorten the Term, all as set forth herein, which modifications are entered into in good faith and as the result of arm's length negotiations.

NOW, THEREFORE, in consideration of the premises, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Sephora and JCP agree as follows:

1.   <u>Mutual Waiver of Defaults</u>.  Each of Sephora and JCP hereby waives and releases any and all defaults and breaches of the Agreement by the other prior to the Amendment Effective Date.  Among other things, and without limitation of the foregoing, Sephora hereby waives any breach of the Agreement by JCP in connection with the March 31, 2020 "furloughing" of SiJCP employees during the pendency of the coronavirus crisis.

2.   <u>Mutual Release of Exclusivity and Standstill</u>.  Sections 4.2(a), 4.2(b) and 9.5(h) of the Agreement are hereby deleted in their entirety.

3.   <u>Term</u>.  Section 1.2 of the Agreement is hereby amended in its entirety to read as follows:

1

"1.2   Term.   The initial "Term" of this Agreement shall commence on the Effective Date of this Agreement and expire on May 31, 2021, unless earlier terminated as set forth in Section 9."

4.   Operating Committee; Wind-Down.  In light of the Parties' agreement to shorten the Term as set forth herein, the Parties desire to manage the SiJCP Beauty Business during the remainder of the Term in a manner that will minimize the financial losses of the Parties.  In furtherance thereof and notwithstanding anything contained in the Agreement to the contrary, the Parties hereby agree that the Operating Committee shall hold regular meetings on a monthly basis (with notice for such regular meetings provided by each Party on a rotating basis fifteen (15) days in advance of each such meeting), and that, in addition to those duties described in Section 2.4 of the Agreement, the Operating Committee will be responsible for directing and overseeing all matters related to the wind-down of the SiJCP Beauty Business, including (for example) those related to personnel, staffing, marketing efforts and shrink and inventory management.

5.   Final Accounting and Final Payments.  The Parties hereby acknowledge and agree that Section 9.5(g) of the Agreement requires that a preliminary accounting of all payment obligations be conducted within ninety (90) calendar days after the effective date of the Termination.  In addition to those payments described in Section 9.5(g) of the Agreement, the Parties hereby agree that JCP shall also pay to Sephora (within such ninety (90) calendar day period described in Section 9.5(g)) an amount equal to the amount of the 2017 Expansion Funding *less* the amounts previously recovered by Sephora through the special adjustment to the settlements otherwise required to be made pursuant to Section 5.1A(c) prior to the effective date of Termination (and any final accounting by the Parties pursuant to Section 9.5(g) shall also include the 2017 Expansion Funding as described herein).

6.   Restatement of Representations and Warranties.  Each of Sephora and JCP hereby restates and affirms as of the Amendment Effective Date its representations and warranties set forth in Section 6 of the Agreement.

7.   Recitals. The Parties hereby acknowledge and agree that the recitals to this Amendment 5 are true and correct, shall be deemed an integral part hereof, and are incorporated into this Amendment 5.

8.   No Other Changes.  Apart from otherwise expressly set forth herein, the Agreement remains in full force and effect.  For the avoidance of doubt, the disengagement provisions of Section 9.5 (Disengagement Requirements) of the Agreement (as modified by Section 5 hereto) shall remain applicable to and govern the disengagement of the Parties following a termination or expiration of the Agreement.

IN WITNESS WHEREOF, the Parties have caused this Amendment 5 to be executed by their duly authorized representatives effective as of the Amendment Effective Date.


J.C. PENNEY CORPORATION, INC.                SEPHORA USA, INC.


By: _____         By: _____
Printed Name: _____          Printed Name: _____
Title: _____       Title: _____

2

1766760.v9
**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 138**                Exhibit B - Page 4 of 4

# EXHIBIT C

Plaintiff's Verified Original Petition and Applications for
Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 139

Exhibit C - Page  1 of 3

_____

From: Rougeot, Jean-André <jeanandrer@sephora.com>
Sent: Sunday, April 26, 2020 4:03 PM
To: Soltau, Jill A; Wlazlo, Michelle
Cc: Malhotra, Satish
Subject: Follow up on Thursday meeting

WARNING :This email originated outside of JCPenney.
DO NOT CLICK links or open attachments unless the actual email address, not just the display name, is the actual email address that you expect to see. Report any suspicious emails immediately via the Report Phishing button in Outlook, or forwarding to phishing@jcp.com<mailto:phishing@jcp.com>.


>
> Dear Jill,
> We were disappointed that we didn't make significant progress Thursday on our wind down discussions .
> I wanted to reiterate the importance of being pragmatic on how we approach this. Under any scenario ( JCP bankruptcy or not ), we can both see that SIJCP is at the end of the road . Due to JCP well publicized financial struggles , brand partners will be very leery to continue working with JCP and new launches will for sure dry up. In any case ( bankruptcy or not ), JCP will emerge from Covid crisis financially weakened and we can all anticipate that traffic into malls ( and therefore JCP ) will be negatively impacted for months if not forever .
> Our common responsibility is to manage professionally and pragmatically a wind down of SIJCP within a reasonable time frame .
>  Based on the above , the topics we want to reach agreement on Tuesday are as follows :
> 1. Timing of wind down. We do not agree with your end of 2022 suggestion as not practical. May 31 2021 is the maximum we can agree to.
> 2. Mutual release of exclusivity clause . As you mentioned on Thursday , this is a logical step to allow both of us to prepare for future .
> 3. Careful management of P&L in wind down period. It is in both of our interests to minimize / eliminate losses during the wind down period . This will mean aggressive management of costs ( people , marketing investments , inventory management , etc...). We obviously can't finalize all the details on Tuesday , but Satish and Michelle can work out the key points as long as we agree on common goal.
> 4 Disengagement requirements. These are all well covered in section 9.5 of our original contract and we suggest we should keep things simple by following them.
>
> These 4 points should be the framework of an agreement between our companies .
> Due to the uncertainties surrounding JCP , we must insist on signing this agreement no later than May 2 . The teams can then work on implementing the agreement at the detailed business level .
>
> Like you , I am keen on finding an amiable and reasonable solution to end up professionally our relationship. This said, the current JCP crisis is not our responsibility and my duty is to protect Sephora and our brand partners at all costs. If this

1

official agreement is not signed by May 2 , we will forced to take other actions to protect our rights , including terminating the contract due to JCP clear breaches .

>

> We look forward to finalize blue print for agreement on Tuesday leading to a signed agreement by May 2

Best

Jean andre

_____

Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged information and may not be disclosed, copied or distributed to anyone without authorization from the email's originator. It is strictly prohibited for unaddressed individuals or entities to take any action based on upon information contained in this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.

_____

2

**Plaintiff's Verified Original Petition and Applications for**
**Declaratory Judgment, Temporary Restraining Order and Temporary Injunction - Page 141**

Exhibit C - Page  3 of 3

Filed: 2020/72020 #:
Lynne Finley
District Clerk
Collin County, Texas
By Alexis Scherff Deputy
Envelope ID: 42561342

CAUSE NO. 471-02242-2020

| | | |
|---|---|---|
| **J. C. PENNEY CORPORATION, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **COLLIN COUNTY, TEXAS** |
| | § | |
| **SEPHORA USA, INC.,** | § | |
| | § | |
| **Defendant.** | § | **471st JUDICIAL DISTRICT** |

## TEMPORARY RESTRAINING ORDER

Before the Court is the Verified Application for Temporary Restraining Order ("Application") filed by Plaintiff J. C. Penney Corporation, Inc. ("Plaintiff" or "JCP") against Defendant Sephora USA, Inc. ("Defendant" or "Sephora"). Having considered Plaintiff's Application and the Verified Petition and other evidence, the Court **GRANTS** the Application as follows.

The Court finds that Sephora has threatened imminent termination of the below-described agreement, the occurrence of which would cause JCP to suffer irreparable injury to its reputation, and irreparable loss of good will.

The Court **FINDS** that (1) JCP has shown a probable right to the relief sought in its Original Petition against Sephora, and (2) JCP will suffer immediate, imminent, and irreparable harm for which there is no adequate remedy at law if a temporary restraining order does not issue. Specifically, if Sephora is not immediately restrained from terminating the February 1, 2009 Amended and Restated Joint Enterprise Operating Agreement, as amended, with JCP (the "Agreement"), JCP will suffer immediate and irreparable injury as a result of Sephora's conduct, including (i) disruption to its business, (ii) loss of business opportunities, (iii) loss of goodwill, (iv) loss of customers, and (v) loss of reputation. These injuries are difficult or impossible to quantify.

Therefore, having considered the Application, the Petition, the arguments of counsel, and all evidence properly before it, the Court, to preserve the status quo, **ORDERS** that Sephora is

restrained and enjoined from ~~threatening to, attempting to, or purporting to, terminate~~ terminating the Agreement.

This Order applies to Sephora, including its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with Sephora who receive actual notice of this Order by personal service or otherwise.

The Court further **FINDS** that the requirements of Collin County Local Rule 2.4(b)(2) have been satisfied and therefore JCP was not required to provide notice under Local Rule 2.4(a) to Sephora or Sephora's counsel.

The Court further **FINDS** that it is vested with powers under the Texas Supreme Court's *First Emergency Order Regarding the COVID-19 State of Disaster*, as well as guidance found in its subsequent orders.  This includes the authority to "[m]odify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted."

Pursuant to those powers, and Texas Rule of Civil Procedure 680, for good cause shown, the Court **ORDERS** that this Order shall expire on May ~~25, 2020 at ___ __.m.,~~ 14, 2020, at 12:00 p.m. unless this Order is further extended by consent of the parties, for good cause shown, or ~~pursuant to other valid authority, including any Orders from the Texas Supreme Court concerning the COVID-19 State of Disaster.~~ by further order of this Court.

**IT IS FURTHER ORDERED** that a Temporary Injunction hearing be held before the Judge in the above-named Court, ~~on May 25, 2020 at ___ __.m.~~ on May 13, 2020, at 1:00 p.m., via videoconference at https://zoom.us, Meeting ID 994-5063-6787. The Court's rules for remote proceedings are available on the Court's website.

This Order shall not be effective unless and until JCP executes and files with the clerk a bond or cash deposit in lieu thereof, in conformity with the law, in the amount of

_$2,500.00_____.

The clerk in the above-titled Court shall forthwith, on the filing by Plaintiff JCP of the

bond or cash deposit in lieu thereof herein required, and on approving same according to law, issue

a Temporary Restraining Order in conformity with the law and terms of this Order.

**IT IS SO ORDERED**.

SIGNED this __27th__ day of __April_____, 2020 at __10:52__ _a__.m.


_____Andrea K. Bouressa_____
**PRESIDING JUDGE**

# Certificate of Cash Deposit In Lieu of Surety Bond

J.C. Penney Corporation, Inc.                                   471st District Court

V.

Sephora USA, Inc.                                        Of Collin County, Texas

I, Lynne Finley, Clerk of the District Courts of Collin County, Texas, do hereby certify that

In Cause No. **471-02242-2020**

**J.C. Penney Corporation, Inc. vs. Sephora USA, Inc.**

Cash deposit in Lieu of Surety Bond in the amount of $2500 was made the 27th day of April, 2020, by Jeremy A. Fielding on behalf of J.C. Penney Corporation, Inc.

Witness my hand and seal of said court on this the 27th day of April, 2020.

ATTEST: Lynne Finley, District Clerk
Collin County, Texas
Collin County Courthouse
2100 Bloomdale Road
McKinney, Texas 75071
972-548-4320, Metro 972-424-1460 ext. 4320

By: _____, Deputy
Tiffany Baker

THE STATE OF TEXAS
WRIT OF INJUNCTION
CASE NO: 471-02242-2020

J.C. Penney Corporation, Inc. vs. Sephora USA, Inc.                    In the 471st District Court

Of Collin County, Texas

TO: Sephora USA, Inc.
Corporation Service Company dba CSC – Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, Texas 78701-3218

GREETINGS:

WHEREAS, on the 27th day of April, 2020, J.C. Penney Corporation, Inc. as Plaintiff (s), filed a petition in the 471st District Court, Collin County, Texas, against Sephora USA, Inc. as Defendant (s), being numbered on the docket of said court in number 471-02242-2020 in which Plaintiff sues for order restraining Defendant from committing certain acts as set out in copy of Plaintiff's Original Petition attached hereto and made a part hereof and

WHEREAS, Andrea Bouressa, Judge of said Court, by order made upon said petition, has granted the Temporary Restraining Order as prayed for and has set down for hearing for the **13th day of May, 2020, at 1:00 PM**, and has directed the Clerk of the Court to issue the necessary writs.

AND WHEREAS, the said Jeremy A. Fielding on behalf of J.C. Penney Corporation, Inc. executed and filed with the Clerk of the Court a bond in the amount of $2500.00 dollars, made payable and conditioned as required by law and fiat of the Judge.

NOW, THEREFORE, you the said Sephora USA, Inc. are hereby restrained and you will refrain from committing any of the acts set out in the Court's Temporary Restraining Order attached hereto and made a part hereof as set forth herein in full and verbatim, and you are commanded to be and appear before the Honorable 471st District Court, at the Courthouse thereof in the City of McKinney on the **13th day of May, 2020, at 1:00 PM**, then and there to show cause, if any you have, why said restraining order should not be continued as a temporary or permanent injunction.

HEREIN FAIL NOT, but due notice take hereof;

WITNESS my hand and seal of said court, at office in the City of McKinney, on this the 28th day of April, 2020.

ATTEST: Lynne Finley, District Clerk
Collin County, Texas
Collin County Courthouse
2100 Bloomdale Road
McKinney, Texas 75071
972-548-4320, Metro 972-424-1460, ext. 4320

By: _____, Deputy
Kathy Richardson

Filed: 5/1/2020 12:23 AM
Lynne Finley
District Clerk
Collin County, Texas
By Kathy Richardson Deputy
Envelope ID: 42591978

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

1601 Elm Street
Dallas, TX 75201
United States

To Call Writer Directly:
+1 214 972 1756
karyn.cooper@kirkland.com

+1 214 972 1770

www.kirkland.com

Facsimile:
+1 214 972 1771

April 28, 2020

**By eFile**

District Clerk
Collin County
Russell A. Steindam Courts Building
2100 Bloomdale Road
McKinney, Texas 75071

Re:     Cause No. 471-02242-2020; *J.C. Penney Corporation, Inc. v. Sephora USA, Inc.*;
        In the 471st Judicial District Court of Collin County, Texas

Dear Clerk:

The above-referenced matter was filed on April 27, 2020 and a Temporary Restraining
Order was also signed on April 27, 2020.   Counsel for the Plaintiff, J.C. Penney Corporation,
Inc., respectfully requests that you issue citation and notice to the Defendant as follows:

Defendant Sephora USA, Inc.
Corporation Service Company dba CSC - Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, Texas 78701-3218.

Please return the citation and notice to us for private process.   If you have any questions
or need any additional information, please do not hesitate to contact me.

Sincerely,

Karyn Cooper Paralegal
to Jeremy Fielding

Beijing   Boston   Chicago   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   Paris   San Francisco   Shanghai   Washington, D.C.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Karyn Cooper on behalf of Jeremy Fielding
Bar No. 24040895
karyn.cooper@kirkland.com
Envelope ID: 42591978
Status as of 04/28/2020 09:50:43 AM -05:00

Associated Case Party: J.C. Penney Corporation, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 4/28/2020 9:25:24 AM | SENT |
| Karyn Cooper | | karyn.cooper@kirkland.com | 4/28/2020 9:25:24 AM | SENT |
| Michael Kalis | | michael.kalis@kirkland.com | 4/28/2020 9:25:24 AM | SENT |

THE STATE OF TEXAS
CIVIL CITATION
CASE NO.471-02242-2020

J.C. Penney Corporation, Inc. vs. Sephora USA, Inc.                In the 471st District Court
Of Collin County, Texas

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: Sephora USA, Inc.
Corporation Service Company dba CSC – Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-3218, Defendant

GREETINGS: You are commanded to appear by filing a written answer to **Plaintiff's Verified Original Petition and Applications for Declaratory Judgment, Temporary Restraining Order and Temporary Injunction** at or before ten o'clock A.M. on the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 471st District Court of Collin County, Texas at the Courthouse of said County in McKinney, Texas.

Said Plaintiff's Petition was filed in said court, by Jeremy A Fielding  Kirkland & Ellis LLP  1601 Elm Street  Dallas TX 75201 (Attorney for Plaintiff or Plaintiffs), on  April 27, 2020, in this case, numbered 471-02242-2020 on the docket of said court.

The natures of Plaintiff's demand is fully shown by a true and correct copy of **Plaintiff's Verified Original Petition and Applications for Declaratory Judgment, Temporary Restraining Order and Temporary Injunction** accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at McKinney, Texas, on this the 28th day of April, 2020.

ATTEST: Lynne Finley, District Clerk
Collin County, Texas
Collin County Courthouse
2100 Bloomdale Road
McKinney, Texas 75071
972-548-4320, Metro 972-424-1460 ext. 4320

By: _____, Deputy
Kathy Richardson

**The law prohibits the Judge and the clerks from giving legal advice, so please do not seek legal advice. Any questions you have should be directed to an attorney.**